Filed 2/13/24  P. v. Rocha CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>JESUS ROCHA,<br><br>     Defendant and Appellant. | F084384<br><br>(Super. Ct. No. LF013328A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Gregory A. Pulskamp, Judge.

Aaron J. Schechter, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Ivan P. Marrs and Edrina Anderson for Plaintiff and Respondent.

-ooOoo-

On March 26, 2021, defendant Jesus Rocha sexually assaulted his 12-year-old niece. On April 12, 2022, defendant was convicted by a jury of five felonies based on the sexual assault. Defendant was sentenced to an aggregate term of 30 years to life. On appeal, defendant argues that (1) running his two 15-year-to-life sentences consecutively instead of concurrently violates the equal protection clause of the California and United States Constitutions; (2) his trial counsel provided ineffective assistance of counsel (IAC) by failing to ask the trial court to consider his ability to pay the fines, fees, and assessments; and (3) the $40 court operations assessment for count 6 should be stricken from the minute order and abstract of judgment because the clerk erroneously supplemented the court's judgment by including it. The People disagree. We modify the judgment to incorporate the $40 court operations assessment and otherwise affirm.

## PROCEDURAL HISTORY

On March 28, 2022, the Kern County District Attorney filed an amended information charging defendant with a lewd or lascivious act upon a child under 14 years of age using force or fear (Pen. Code, § 288, subd. (b)(1); count 1);[1] forcible sexual penetration of a child under 14 years of age with a foreign object (§ 289, subd. (a)(1)(B); count 2); lewd or lascivious act upon a child under 14 years of age (§ 288, subd. (a); count 3); forcible rape (§ 261, subd. (a)(2); count 4); forcible rape of a child under 14 years of age who was more than seven years younger than defendant (§ 269, subd. (a)(1); count 5); and forcible sexual penetration of a child under 14 years of age who was more than seven years younger than defendant with a foreign object (§ 269, subd. (a)(5); count 6). The amended information also alleged three aggravating factors for each count. As to count 4, the amended information was subsequently amended to allege that the victim was under 14 years of age (§ 264, subd. (c)(1)).

---

[1]     All further undesignated statutory references are to the Penal Code.

2.

On April 12, 2022, defendant was found guilty by a jury on counts 1, 2, 4, 5, and 6. The jury also found true all alleged aggravating factors for each of these counts and that the victim was under 14 years old. The jury was instructed that count 3 was a lesser included offense to count 1, and as the jury found defendant guilty of count 1, it did not reach a verdict on count 3. Count 3 was subsequently dismissed.

Defendant was sentenced on May 9, 2022. The trial court imposed an aggregate term of 30 years to life. As to count 5, defendant was sentenced to 15 years to life. As to count 6, defendant was sentenced to 15 years to life, to be served consecutively to the sentence on count 5 pursuant to section 667.6, subdivision (d). The court also sentenced defendant to 10 years on count 1, 12 years on count 2, and 13 years on count 4, but stayed these sentences pursuant to section 654. The court also imposed fines, fees, and assessments totaling $3,070. In the abstract of judgment, entered on May 12, 2022, the fines, fees, and assessments totaled $3,110. The abstract of judgment included a $40 court operations assessment on count 6 that was not orally pronounced by the court.

On May 23, 2022, defendant filed a notice of appeal.

## FACTUAL SUMMARY

On March 26, 2021, defendant's 12-year-old niece, N.O., was in the living room of the home where she and defendant lived. N.O. was sitting on a chair and defendant was sitting on a mattress.

Defendant came up to N.O. and showed her a game on his phone. Defendant then began touching N.O.'s breasts. He also touched her vagina. N.O. tried to push defendant away, but he grabbed her and started hitting her. Defendant threw N.O. onto the mattress, grabbed her hands, and took off her shorts and underwear. Defendant inserted his finger or fingers and his penis inside N.O.'s vagina. Defendant covered N.O.'s mouth to prevent her from talking or screaming. N.O. tried to push and kick defendant off of her, but she could not. The sexual assault stopped after N.O.'s sister came into the room.

3.

# DISCUSSION

## I. Defendant's Sentence Does Not Violate the Equal Protection Clause

### A. *Applicable Law*

"[T]he requirement of equal protection ensures that the government does not treat a group of people unequally without some justification." *(People v. Chatman* (2018) 4 Cal.5th 277, 288 *(Chatman*).) "Where, as here, a statute involves neither a suspect class nor a fundamental right, it need only meet minimum equal protection standards, and survive 'rational basis review.'" (*People v. Turnage* (2012) 55 Cal.4th 62, 74.)[2]

"In order to decide whether a statutory distinction is so devoid of even minimal rationality that it is unconstitutional as a matter of equal protection, we typically ask two questions. We first ask whether the state adopted a classification affecting two or more groups that are similarly situated in an unequal manner. [Citation.] If we deem the groups at issue similarly situated in all material respects, we consider whether the challenged classification ultimately bears a rational relationship to a legitimate state purpose." (*Chatman, supra*, 4 Cal.5th at p. 289.)

"A classification in a statute is presumed rational until the challenger shows that no rational basis for the unequal treatment is reasonably conceivable. [Citations.] The underlying rationale for a statutory classification need not have been '"ever actually articulated"' by lawmakers, and it does not need to '"be empirically substantiated."' [Citation.] Nor does the logic behind a potential justification need to be persuasive or sensible—rather than simply rational." (*Chatman, supra*, 4 Cal.5th at p. 289.) "This core feature of equal protection sets a high bar before a law is deemed to lack even the minimal rationality necessary for it to survive constitutional scrutiny. Coupled with a rebuttable presumption that legislation is constitutional, this high bar helps ensure that

---

[2]      The parties agree that rational basis review is appropriate here.

democratically enacted laws are not invalidated merely based on a court's cursory conclusion that a statute's tradeoffs seem unwise or unfair." (*Ibid*.)[3]

### B.    Analysis

Defendant argues that running his two 15-year-to-life sentences consecutively violates the equal protection clause of the Fourteenth Amendment to the United States Constitution and the California Constitution. According to defendant, there are two classes at issue: (1) those who have sexual intercourse with the victim; and (2) those who, like defendant, have sexual intercourse with the victim and insert another object into the victim's vagina. Defendant argues that "it is irrational for [defendant] to be doubly punished—twice the punishment for simply raping [N.O.]—because he happened to also insert a finger into [N.O.'s] vagina."

Defendant did not raise this claim below. The failure to object in the trial court generally forfeits a claim on appeal, and this principle is applicable to constitutional claims. (*People v. McCullough* (2013) 56 Cal.4th 589, 593; *In re Sheena K.* (2007) 40 Cal.4th 875, 880–881.) However, even if this claim was forfeited, we exercise our discretion to consider it on the merits. (*People v. Williams* (1998) 17 Cal.4th 148, 161–162, fn. 6 ["An appellate court is generally not prohibited from reaching a question that has not been preserved for review by a party."].)

Addressing the merits, defendant's consecutive sentences on counts 5 and 6 do not violate the equal protection clause. To begin, defendant has not accurately defined the classes at issue. In this case, the trial court found that consecutive sentences were

---

[3]    "The California equal protection clause offers substantially similar protection to the federal equal protection clause." (*People v. Laird* (2018) 27 Cal.App.5th 458, 469; *Chatman, supra*, 4 Cal.5th at p, 287 ["Though [our Supreme Court's] analysis of state constitutional requirements sometimes deviates from how comparable federal requirements are analyzed, [its] precedent has not distinguished the state and federal guarantees of equal protection for claims arising from allegedly unequal consequences associated with different types of criminal offenses."].)

mandatory pursuant to section 667.6, subdivision (d).[4]  Pursuant to this section, mandatory consecutive sentences are required where the crimes at issue "involve the same victim on separate occasions."  (§§ 667.6, subd. (d)(1), 269, subd. (c).)  "In determining whether crimes against a single victim were committed on separate occasions under this subdivision, the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon the defendant's actions and nevertheless resumed sexually assaultive behavior.…"  (§ 667.6, subd. (d)(2).)  The court made these findings here, and defendant does not challenge them.

Thus, the appropriate definition of the class to which defendant belongs is those who commit two separate crimes involving penetration[5] and who had a reasonable opportunity to reflect in between committing the crimes.  Those who commit two separate crimes involving penetration and who have a reasonable opportunity to reflect in between committing them are not similarly situated with those who commit one crime involving one act of penetration.  (*People v. Morales* (2019) 33 Cal.App.5th 800, 808 ["Generally, offenders who commit different crimes are not similarly situated."]; *People v. Ordonez* (1991) 226 Cal.App.3d 1207, 1237 ["Persons convicted of different crimes are not similarly situated for equal protection purposes."].)

Moreover, even if these groups are similarly situated, there is a rational basis to impose significantly longer sentences on those who commit multiple acts of penetration

---

[4]  Alternatively, the trial court found that even if the acts did not occur on separate occasions, it would have exercised its discretion to impose consecutive sentences pursuant to section 667.6, subdivision (c).  However, defendant does not challenge the court's finding that mandatory sentences were required pursuant to section 667.6, subdivision (d), so we need not consider the trial court's alternative basis for imposition of consecutive sentences.

[5]  Defendant was convicted of forcible rape of a child under 14 years of age who was more than seven years younger than defendant (§ 269, subd. (a)(1)) and forcible sexual penetration of a child under 14 years of age who was more than seven years younger than defendant with a foreign object (§ 269, subd. (a)(5)).

with time to reflect in between "because a defendant who commits 'a number of base criminal acts on his victim is *substantially more culpable* than a defendant who commits only one such act.'" (*People v. Hicks* (1993) 6 Cal.4th 784, 796, italics added; accord, *People v. Harrison* (1989) 48 Cal.3d 321, 330 ["[t]he Legislature, by devising a distinctly harsh sentencing scheme, has emphasized the seriousness with which society views each separate unconsented sexual act"].)

Given the above, defendant's claim that his sentence violates the equal protection clause fails.

## II.    Defendant's IAC Claim Fails

### A.    *Applicable Law and Standard of Review*

Defendant has the burden of proving IAC. (*People v. Pope* (1979) 23 Cal.3d 412, 425, overruled on other grounds in *People v. Berryman* (1993) 6 Cal.4th 1048, 1081, fn. 10.) To establish such a claim, a defendant must show (1) his counsel's performance fell below an objective standard of reasonableness and (2) prejudice, that is, but for counsel's unprofessional error a different result would have been reasonably probable. (*Strickland v. Washington* (1984) 466 U.S. 668, 687–688, 694 (*Strickland*); *People v. Ledesma* (1987) 43 Cal.3d 171, 216–218.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland, supra*, at p. 694.) "Because of the difficulties inherent in making the evaluation [of counsel's performance], a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" (*Id*. at p. 689.)

"It is … particularly difficult to establish [IAC] on direct appeal, where we are limited to evaluating the appellate record. If the record does not shed light on why counsel acted or failed to act in the challenged manner, we must reject the claim on appeal unless counsel was asked for and failed to provide a satisfactory explanation, or

there simply can be no satisfactory explanation." (*People v. Scott* (1997) 15 Cal.4th 1188, 1212.)

### B.    Analysis

At sentencing, the trial court imposed fines, fees, and assessments totaling $3,070.[6] Defendant argues that his trial counsel provided IAC by failing to ask the court to consider his ability to pay these fines, fees, and assessments.[7]

Defendant was appointed counsel in the underlying proceeding and this appeal, and the probation report contains some information suggesting that defendant had no assets or income. Thus, there is some information in the record suggesting that defendant could not afford to pay the fines, fees, and assessments.

However, the record is silent as to why defendant's trial counsel did not ask the trial court to consider defendant's ability to pay. Additionally, the record is not fully developed regarding defendant's assets and sources of income, and it does not affirmatively establish defendant's inability to pay. Given the record before us, there is at least one satisfactory explanation for trial counsel's omission. That is, trial counsel may have chosen not to raise the issue because he had reason to believe that defendant had the ability to pay. (*People v. Ramirez* (2023) 98 Cal.App.5th 175, 226 ["Here, the record does not affirmatively demonstrate [the] defendant's trial counsel had no rational tactical purpose for failing to object to the imposition of the challenged fines and fees. Defense counsel may have had access to information about [the] defendant's financial status, including the possibility of his earnings while in prison, that would make such an objection unsuccessful." (Fn. omitted.)].)

---

[6]    An additional $40 assessment was included in the minute order and the abstract of judgment. This $40 assessment is addressed below.

[7]    Notably, defendant does not cite to any authority that his trial counsel failed to raise before the trial court.

Accordingly, defendant has failed to meet his burden to establish that trial counsel's performance fell below an objective standard of reasonableness.

### III. We Modify the Judgment to Incorporate the $40 Court Operations Assessment

#### A. *Standard of Review*

On review, we may add to the judgment omitted fines, fees, or assessments that are mandatory, rather than the product of a discretionary sentencing choice, and traditional forfeiture rules do not apply. (*People v. Talibdeen* (2002) 27 Cal.4th 1151, 1157 [appellate courts may correct omission of mandatory penalties even if not objected to at sentencing]; *People v. Smith* (2001) 24 Cal.4th 849, 852 ["obvious legal errors at sentencing that are correctable without referring to factual findings in the record or remanding for further findings are not waivable"]; *People v. Rodriguez* (2012) 207 Cal.App.4th 1540, 1543, fn. 2 [the assessment in § 1465.8 may be added to the judgment on review when not imposed].)

#### B. *Analysis*

In his supplemental brief, defendant argues that the $40 court operations assessment (§ 1465.8) for count 6 should be stricken because the trial court did not impose it during the oral pronouncement of judgment and "*People v. Dueñas* (2019) 30 Cal.App.5th 1157, 1172 holds that this assessment is not mandatory, as due process requires that it only be imposed on defendants who have the ability to pay it."

Defendant is correct that the trial court did not impose a court operations assessment for count 6. Defendant is also correct that, as a general rule, when a discrepancy exists between a court's oral pronouncement and the minute order or the abstract of judgment, the oral pronouncement controls. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

However, in this case, imposition of the $40 assessment was statutorily mandated. (§ 1465.8, subd. (a)(1) ["To assist in funding court operations, an assessment of forty dollars ($40) shall be imposed on every conviction for a criminal offense"]; *People v.*

9.

*Rodriguez, supra*, 207 Cal.App.4th at p. 1543, fn. 2 [the assessment in § 1465.8 is mandatory]; *People v. El* (2021) 65 Cal.App.5th 963, 967 ["[t]he trial court was required to impose … a $40 court operations assessment under … section 1465.8"].)  Additionally, the record shows that defendant did not ask the trial court to exercise any discretion it may have had to waive or stay any fines, fees, and assessments.[8]  Finally, given that defendant made no such request, as well as the fact that the court imposed $3,070 of fines, fees, and assessments, including a court operations assessment on four out of five counts, the record shows that the court did not purposefully exercise any discretion it may have had when it did not impose the assessment on count 6.  Instead, it was an oversight.

Accordingly, in this case the $40 assessment was mandatory.[9]  In accordance with the above authorities, we will modify the judgment to incorporate the $40 court operations assessment.[10]

---

[8]    Because defendant's potential inability to pay was not raised before the trial court, this case does not require us to determine the discretion the trial court may have had to not impose mandatory fines, fees, and assessments.  (See, e.g., *People v. Montes* (2021) 59 Cal.App.5th 1107, 1116 ["Courts of Appeal are … split regarding if and under what circumstances the constitutional concerns underpinning the decision in *Dueñas* apply."].)

[9]    We emphasize that defendant never asked the trial court to consider whether, and to what extent, it had discretion to stay or strike fines, fees, and assessments, and there is nothing in the record suggesting that it made any such determination.  In this situation, all mandatory fines, fees, and assessments should have been imposed, and we correct the failure to impose one mandatory assessment.

[10]    As the trial court did not impose the $40 assessment at the sentencing hearing, defendant did not have a chance to object to the assessment based on an inability to pay.  However, as a practical matter, if defendant chose not to object to fines, fees, and assessments totaling $3,070, we see no reason why he would have objected to this additional $40 fee.  (*People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1033 ["As a practical matter, if [the defendant] chose not to object to a $10,000 restitution fine based on an inability to pay, he surely would not complain on similar grounds regarding an additional $1,300 in fees."]; *People v. Montelongo* (2020) 55 Cal.App.5th 1016, 1034 ["By failing to object to the $10,000 restitution fine, however, [the defendant] left no doubt he would not have challenged the much lower assessments even if he knew he had a right under *Dueñas* to request a hearing on his ability to pay."].)

**DISPOSITION**

The judgment is modified to incorporate the $40 court operations assessment pursuant to section 1465.8.  As modified, the judgment is affirmed.[11]


MEEHAN, J.

WE CONCUR:


POOCHIGIAN, Acting P. J.


DeSANTOS, J.

---

[11]     Because this mandatory fee was included in the sentencing minutes and abstract of judgment, no correction to the abstract or minutes is needed.